[No. B218089. Second Dist., Div. One. Aug. 12, 2010.]

PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE, Plaintiff and Appellant, v.
McDONALD'S CORPORATION et al., Defendants and Respondents.

556

558

**COUNSEL**

Richards, Watson & Gershon, Norman A. Dupont, T. Peter Pierce; and Daniel Kinburn for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Ken Alex, Assistant Attorney General, Dennis A. Ragen, Laura J. Zuckerman and Claudia Polsky, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Appellant.

Goodwin Procter, Forrest A. Hainline III, Robert B. Bader; Arnold & Porter, Trenton H. Norris and Sarah Esmaili for Defendants and Respondents.

**OPINION**

**JOHNSON, J.**—Physicians Committee for Responsible Medicine (PCRM) appeals from the trial court's grant of summary judgment in favor of chain restaurant corporations. The trial court concluded that federal law preempted Proposition 65 warnings that grilled chicken contains a known carcinogen. We reverse.

## FACTS

In January 2008, PCRM, a nonprofit organization self-described as "committed to promoting a safe and healthful diet and to protecting consumers from food and drink that are dangerous or unhealthful," filed a complaint in Los Angeles Superior Court against seven chain restaurant corporations (Restaurants),[1] seeking an injunction, civil penalties, and declaratory relief to prevent the Restaurants "from continuing to sell grilled chicken products to

---

[1] Burger King Corporation later settled with PCRM and is not a party to this appeal. One of the named corporate defendants, Carlson Restaurants Worldwide, Inc., owns and controls TGI Friday's, Inc., which is also named as a defendant in the complaint.

consumers without clear and reasonable warnings about the carcinogenic effects of those products." The complaint alleged that McDonald's, TGI Friday's, Applebee's, Chick-Fil-A, Chili's, and Outback Steakhouse each sold grilled chicken products to consumers in California, and that the cooking process used to grill the chicken created a chemical called PhIP.[2] The complaint alleged that warnings about the PhIP in grilled chicken were required under the California Safe Drinking Water and Toxic Enforcement Act of 1986, Health and Safety Code[3] section 25249 et seq. (Prop. 65), "under which restaurants and other businesses must provide persons with a 'clear and reasonable warning' before exposing consumers to carcinogenic chemicals in the food that they sell and serve."[4] The complaint requested an injunction requiring each of the Restaurants to provide warnings and pay statutory civil penalties of up to $2,500 per violation,[5] and a declaratory judgment that each of the Restaurants was in violation of Proposition 65 and was required to disclose that its grilled chicken contained a carcinogen.

PCRM provided responses to interrogatories in which it identified three warnings that "might constitute a 'clear and reasonable warning' " under Proposition 65, variably stating that "well cooked chicken," "thoroughly cooked chicken," or "grilled chicken" contained chemicals known to the State of California to cause cancer:

"WARNING: WELL COOKED CHICKEN, INCLUDING THE CHICKEN SERVED IN THIS RESTAURANT, CONTAINS CHEMICALS KNOWN TO THE STATE OF CALIFORNIA TO CAUSE CANCER.

"WARNING: THOROUGHLY COOKED CHICKEN, INCLUDING THE CHICKEN SERVED IN THIS RESTAURANT, CONTAINS CHEMICALS KNOWN TO THE STATE TO CAUSE CANCER.

"Chemicals known to the State of California to cause cancer, or birth defects or other reproductive harm may be present in foods or beverages sold or served here. [¶] Some foods sold here may contain chemicals formed as a

---

[2] PhIP is shorthand for the chemical 2-amino-1-methyl-6-phenylimidazo[4,5-b]pyridine. PCRM alleged that it had purchased chicken samples from each of the Restaurants and had submitted the samples to an independent environmental testing laboratory, which found all of the tested grilled chicken samples contained PhIP.

[3] All further statutory references are to the Health and Safety Code unless otherwise indicated.

[4] PCRM brought suit under section 25249.7, subdivision (d), which provides that an action to enforce Proposition 65 may be brought by "any person [acting] in the public interest."

[5] Section 25249.7, subdivision (b)(1), provides that if an enforcement action results in a finding of a violation of Proposition 65, the violator "shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) per day for each violation in addition to any other penalty established by law."

by-product of cooking that are known to the State of California to cause cancer or birth defects or other reproductive harm. These chemicals include Polycyclic Aromatic Hydrocarbons and PhIP (2-Amino-1-methyl-6-phenylimidazol[4,5-b]pyridine (in grilled chicken)."

PCRM conceded that other warnings might satisfy the Proposition 65 requirement that any warning be clear and reasonable.

The Restaurants filed a cross-complaint in October 2008 for a declaration that these potential Proposition 65 warnings were preempted by the federal Poultry Products Inspection Act (21 U.S.C. § 451 et seq.) (PPIA), because they conflicted with federal policies promoting the thorough cooking of chicken to "prevent the spread of foodborne illness." The cross-complaint described the PPIA as enacted to "protect[] consumers against poultry products that are unwholesome, adulterated or misbranded," and to this end "the PPIA establishes a comprehensive and uniform federal scheme regulating labeling, processing and inspection of poultry in a manner that ensures that all poultry sold to consumers is wholesome, not adulterated, and properly marked." The Restaurants cited sections of the PPIA prohibiting any person from selling "adulterated" or "misbranded" poultry products (21 U.S.C. § 458(a)(2)) and describing " 'misbranded' " products as including those with "false or misleading" labeling. (21 U.S.C. § 453(h)(1).)

The Restaurants' cross-complaint alleged that the federal Food Safety and Inspection Service (FSIS), a division of the United States Department of Agriculture (USDA), the agency charged with implementing the PPIA, had "determined that preventing foodborne illness is an important federal policy." USDA had "adopted safe handling instruction regulations," and had created programs to educate the public about "the need to thoroughly cook meat and poultry products to avoid foodborne illness." The cross-complaint cited an October 25, 2006 letter from the USDA to the State Department of Health Services. The USDA letter referenced PCRM's Proposition 65 lawsuit and took the position that Proposition 65 warnings were preempted by federal policies "implemented by FSIS to prevent foodborne illness associated with the consumption of meat and poultry products," and the warnings therefore would "cause poultry products to be misbranded under the PPIA." The USDA letter also stated that "by implying that cooked poultry is somehow unsafe or unwholesome, Proposition 65 warnings provide a disincentive for consumers to thoroughly cook raw poultry products."

The cross-complaint alleged that as a result, the warnings requested by PCRM were "in direct conflict with and are preempted by federal law" because the warnings "would have the effect of frightening consumers from properly cooking chicken, thus frustrating USDA's efforts to ensure that

people consume thoroughly cooked chicken," and the warnings "constitute[] labeling that would render the Grilled Chicken Products misbranded under the PPIA." The only warning not preempted was Proposition 65's "safe harbor" warning (the Safe Harbor Warning), which was posted in some of the Restaurants during the statute of limitations period,[6] and which provides: "WARNING: Chemicals known to the State of California to cause cancer, or birth defects or other reproductive harm may be present in foods or beverages sold here." (See Cal. Code Regs., tit. 27, § 25603.3, subd. (a).) The Restaurants alleged: "An actual controversy has arisen and now exists in that PCRM contends that the Safe Harbor Warning fails to provide 'clear and reasonable' warning of alleged exposures to PhIP in Grilled Chicken Products."

The Restaurants filed a motion for summary judgment or, in the alternative, summary adjudication on the cross-complaint. The trial court heard the motion on November 17, 2008, and after orally granting the motion directed the Restaurants to prepare a proposed order and judgment. The court issued an order on January 9, 2009, granting summary judgment for the Restaurants. The trial court found that the three proposed warnings (mentioning "well cooked," "thoroughly cooked" and "grilled" chicken) proposed by PCRM were barred by federal conflict preemption, because they would frustrate USDA's "longstanding policy of promoting the safe cooking of chicken." The warnings also conflicted with the PPIA's purpose of ensuring that consumers have confidence in the wholesomeness of the chicken they consume, because if the warnings were posted regarding the chicken served in the Restaurants, "consumers may decide that the chicken is not wholesome and will stop eating chicken." "For this reason alone, any Proposition 65 warning that PCRM is seeking would frustrate USDA's longstanding policy of promoting consumer confidence in the wholesomeness of chicken consumed by them."

The summary judgment order also concluded that the PCRM warnings, whether on posted signs or on packaging, would constitute " 'labeling' " and

[6] The cross-complaint states: "In June 2006, after PCRM issued Proposition 65 sixty-day notices of intent to sue the Restaurants ('Notices'), and before it filed the Original Action, Cross-Complainants Brinker International, Inc. and OSI Restaurant Partners, Inc. informed Cross-Defendant that the Safe Harbor Warning Language had been posted in all California restaurants identified in the Notices to those Cross-Complainants at all times during the statute of limitations period. Nonetheless, PCRM proceeded to file the Original Action against these Restaurants. Other Restaurants identified in the Notices have also posted warnings containing the Safe Harbor Warning Language, or language that is substantially similar thereto. [¶] . . . Through this action, PCRM seeks to require all Restaurants to post warnings for these products that differ substantially from the Safe Harbor Warning." The cross-complaint continues: "The Restaurant's position is that, to the extent a Proposition 65 warning must be provided for any alleged exposures to PhIP in Grilled Chicken Products, the Safe Harbor Warning—or any warning substantially similar to the Safe Harbor Warning—is clear and reasonable under Proposition 65."

would cause the chicken to be "misbranded under the PPIA." Finally, the Safe Harbor Warning was "presumptively 'clear and reasonable,' " and PCRM could not obtain relief to require any different warning in any Restaurant already providing the Safe Harbor Warning.

The day before the filing of the order granting summary judgment, PCRM amended its discovery response to identify two more proposed warnings: one stating that "certain chicken products" contained the carcinogen, and the Proposition 65 Safe Harbor Warning. In February 2009, the Restaurants filed a second motion for summary judgment, again on the basis that federal law preempted the additional warnings suggested by PCRM.

The trial court granted the second summary judgment motion in an order filed on May 22, 2009, incorporating its January 9, 2009 order in full. The trial court stated that its January 9, 2009 order did not address the two new warnings proposed by PCRM and so did not dispose of all the causes of action in PCRM's complaint. At the hearing on May 5, 2009, "Plaintiff's counsel conceded that the first new warning concerning the presence of PhIP in certain unidentified chicken products is preempted based on the Court's prior summary adjudication rulings relating to the cross-complaint. The Court took the matter under submission with respect to the Safe Harbor Warning." The trial court noted "Some defendants may have posted Safe Harbor Warnings in their restaurants prior to the case being filed or during the course of litigation. Those warnings were not posted 'as a result of relief awarded in this lawsuit' and, therefore, do not send a message about the carcinogenic content, if any, of Defendants' grilled chicken products."

The trial court concluded: "In granting summary adjudication of the cross-complaint, the Court found that the three warnings there, if posted, would conflict directly with the United States Department of Agriculture's 'longstanding polic[ies] of promoting the safe cooking of chicken' and 'consumer confidence in the wholesomeness of chicken consumed by them.' The Court reasoned that the warnings would imply that, contrary to federal law and policy, properly cooked chicken is unsafe and unwholesome."

"The Court also found that the three warnings would render the chicken products misbranded under the Poultry Products Inspection Act ('PPIA'), 21 U.S.C. §§ 451 et seq.

"The situation here is somewhat different since the Safe Harbor Warning says nothing about chicken, let alone grilled chicken, and does not mention PhIP. Nevertheless, the Court agrees with Defendants that this is an inconsequential distinction. While the plain language of the Safe Harbor Warning does not state that grilled chicken is unsafe and unwholesome, the context in

which a Safe Harbor Warning, or any other warning, would be posted cannot be ignored. Any order from this Court ordering a warning to be posted would be supported by a finding that Defendants' grilled chicken products contain carcinogens in amounts sufficient to require warnings under Proposition 65. Such a finding would communicate a message that Defendants' grilled chicken products are unsafe and unwholesome even though federal law and policy hold that properly cooked chicken is safe and wholesome. Indeed, an average reasonable customer probably would equate the presence of a carcinogen with unwholesomeness. For this reason, and based on the rationale in the Court's prior order, and based on the arguments made in Defendants' summary judgment papers, the Court finds that the Safe Harbor Warning, and any other possible warning pertaining to the carcinogenic contents of Defendants' grilled chicken products, conflict with federal law and policy, including, but not limited to, the PPIA, and are preempted as a matter of law." (Fns. omitted.) The court granted the Restaurants' motion for summary judgment.

The trial court entered final judgment in favor of the Restaurants on June 23, 2009, and PCRM filed this timely appeal.

## BACKGROUND

### I. *Federal Preemption*

The trial court granted summary judgment on the ground that providing the Safe Harbor Warning, or any other possible Proposition 65 warnings regarding the presence of the carcinogen PhIP in grilled chicken, would communicate a message that the Restaurants' grilled chicken products were unwholesome, "even though federal law and policy hold that properly cooked chicken is safe and wholesome." The court concluded that all the possible warnings under Proposition 65 regarding the presence of PhIP in grilled chicken "conflict with federal law and policy, including, but not limited to, the PPIA, and are preempted as a matter of law." The trial court's finding is a finding of conflict preemption.

█ "Congress, as well as federal agencies, may expressly or impliedly preempt state law. [Citation.] There is express preemption where federal law explicitly preempts state law. [Citation.] There is implied preemption where federal law was intended to occupy the legislative field or where state law conflicts with federal law, either because it's impossible to comply with both laws or because state law stands as an obstacle to accomplishing the purposes of federal law. [Citations.] In either case, there's a strong presumption against preemption, especially when the state law deals with matters like health and animal welfare, which have historically been regulated by states. [Citation.]" (*National Meat Assn. v. Brown* (9th Cir. 2010) 599 F.3d 1093, 1097.)

The California Supreme Court has put it simply: "Whether federal law preempts state law is fundamentally a question whether Congress has intended such a result. [Citations.] [¶] The 'starting presumption' is that Congress has not so intended." (*Peatros v. Bank of America* (2000) 22 Cal.4th 147, 157 [91 Cal.Rptr.2d 659, 990 P.2d 539].) Conflict preemption occurs when " '[S]tate law is pre-empted to the extent that it actually conflicts with federal law.' [Citations.] Such conflict must be 'of substance and not merely trivial or insubstantial.' [Citation.] It exists when . . . [citations] . . . state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' underlying federal law [citations]." (*Id.* at p. 158.) "Conflict preemption of state law by federal law does not automatically and necessarily result in the *complete* displacement of state law by federal law *in its entirety*. Rather, it does so insofar [citation], but only insofar [citation], as there is conflict." (*Id.* at p. 172.)

" 'Where . . . the field that Congress is said to have pre-empted has been traditionally occupied by the States "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." ' [Citations.]" (*Hillsborough County v. Automated Medical Labs.* (1985) 471 U.S. 707, 715 [85 L.Ed.2d 714, 105 S.Ct. 2371].) "As with any state law regulating health and safety, we begin by presuming Proposition 65 is not displaced. [Citation.]" (*People ex rel. Lungren v. Cotter & Co.* (1997) 53 Cal.App.4th 1373, 1387 [62 Cal.Rptr.2d 368].)

### A. *The PPIA*

█ Congress enacted the PPIA, the federal statute that the Restaurants claim preempts all Proposition 65 warnings for grilled chicken, in part to protect "the health and welfare of consumers . . . by assuring that poultry products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged," rather than "[u]nwholesome, adulterated, or misbranded." (21 U.S.C. § 451.) The statute states: "[n]o person shall" "sell, transport, offer for sale or transportation, or receive for transportation, in commerce, . . . any poultry products which are capable of use as human food and are adulterated or misbranded at the time of such sale." (21 U.S.C. § 458(a)(2).)

The statute defines " 'person' " as "any individual, partnership, corporation, association, or other business unit." (21 U.S.C. § 453(j).) A poultry product is "any poultry carcass, or part thereof; or any product which is made wholly or in part from any poultry carcass or part thereof," and the poultry product is " 'misbranded' " "if its labeling is false or misleading in any particular." (21 U.S.C. § 453(f), (h)(1).) " '[L]abeling' means all labels and

other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." (21 U.S.C. § 453(s).)

■ The PPIA contains an express preemption clause prohibiting states from imposing "marking, labeling, [or] packaging" requirements different from those in the federal statute with regard to articles prepared at "any official establishment" (21 U.S.C. § 467e), which the statute defines as "any establishment . . . at which inspection of the slaughter of poultry, or the processing of poultry products, is maintained under the authority of this chapter." (21 U.S.C. § 453(p).)[7] This express preemption clause does not apply to the Restaurants, as the PPIA exempts restaurants from its inspection requirements (of the slaughter of poultry and the processing of chicken products). (21 U.S.C. § 454(c)(2).)[8]

The Restaurants argue that the PPIA's misbranding provision prohibits them from selling in commerce any poultry product with misleading labeling, and that Proposition 65 warnings regarding PhIP in grilled chicken would be misleading, thus conflicting with the misbranding provision of the PPIA.

## B. *Proposition 65*

■ Passed in 1986 by California voters to protect the health and safety of Californians, Proposition 65 requires California to create and maintain a list of chemicals "known to the state to cause cancer or reproductive toxicity." (§ 25249.8, subd. (a).) The statute provides: "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual . . . ," unless a specified exemption applies. (§ 25249.6.) Proposition 65 provides an exemption from the warning requirement for "[a]n exposure for which federal law governs warning in a manner that preempts state authority." (§ 25249.10, subd. (a).)

---

[7] The statute also provides: "any State . . . may, consistent with the requirements under this chapter exercise concurrent jurisdiction with the Secretary over articles required to be inspected under this chapter, for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded and are outside of such an establishment . . . ." (21 U.S.C. § 467e.)

[8] In *American Meat Institute v. Leeman* (2009) 180 Cal.App.4th 728 [102 Cal.Rptr.3d 759], the Fourth District held that the express preemption clause of a similar statute, the Federal Meat Inspection Act (21 U.S.C. § 601 et seq.) preempted the imposition of the Proposition 65 warning requirement on meatpackers and processors, concluding: "Proposition 65's point of sale warning requirements with respect to meat are preempted by the [Act]." (180 Cal.App.4th at p. 761.)

The State of California had listed PhIP in 1994 as a chemical "known to the state to cause cancer or reproductive toxicity." PCRM's complaint alleged that after the one-year grace period[9] following the 1994 listing of PhIP, the Restaurants had not given Proposition 65's required clear and reasonable warnings to customers that grilled chicken contained the carcinogen.

### 1. The "no significant risk" exemption from the warning requirement

Proposition 65 exempts from the warning requirement "[a]n exposure for which the person responsible can show that the exposure poses no significant risk assuming lifetime exposure at the level in question for substances known to the state to cause cancer . . . ." (§ 25249.10, subd. (c).)[10] This exemption requires that the Restaurants show that the exposure is below the level requiring a warning: "In any action brought to enforce Section 25249.6, the burden of showing that an exposure meets the criteria of this subdivision shall be on the defendant." (*Ibid.*) The Restaurants' cross-complaint did not allege that the level of PhIP in their grilled chicken was below the level requiring a Proposition 65 warning, and there is no evidence in the record before the trial court on summary judgment regarding the actual level of PhIP in grilled chicken generally, or in grilled chicken sampled from any of the Restaurants.

### 2. The Safe Harbor Warning

Proposition 65 requires that warnings be "clear and reasonable." (§ 25249.6.) The implementing regulations provide: "Whenever a clear and reasonable warning is required under Section 25249.6 of the Act, the method employed to transmit the warning must be reasonably calculated, considering the alternative methods available under the circumstances, to make the warning message available to the individual prior to exposure. The message must clearly communicate that the chemical in question is known to the state to cause cancer . . . ." (Cal. Code Regs., tit. 27, § 25601.) The regulations state that the warnings may be provided by using one or more methods, including product labeling, point-of-sale signs, or public advertising. (Cal. Code Regs., tit. 27, § 25603.1, subds. (a)–(d).)

The regulations also describe " 'safe harbor' " warning messages, which are deemed to meet the "clear and reasonable" standard. (*Dowhal v.*

---

[9] The Proposition 65 warning requirement does not apply to an exposure that occurs less than 12 months after the listing of the chemical as a carcinogen. (§ 25249.10, subd. (b).)

[10] In general, Proposition 65 requires warnings if the level of cancer risk is higher than the "no significant risk" level, which the regulations define as one (or fewer) additional cases of cancer per 100,000 people, assuming lifetime exposure. (Cal. Code Regs., tit. 27, § 25703, subd. (b).)

*SmithKline Beecham Consumer Healthcare* (2004) 32 Cal.4th 910, 918 [12 Cal.Rptr.3d 262, 88 P.3d 1].) For "food . . . sold, served, or otherwise provided in food facilities . . . which is intended for immediate consumption," the "safe harbor" warning is " 'WARNING: Chemicals known to the State of California to cause cancer, or birth defects or other reproductive harm may be present in foods or beverages sold or served here.' " (Cal. Code Regs., tit. 27, § 25603.3, subd. (a).) This language is the Safe Harbor Warning which the summary judgment order stated some of the Restaurants "may have posted" before the case was filed or during the course of litigation. The trial court concluded that the Safe Harbor Warning was preempted because the "context" under which the Safe Harbor Warning (or any other warning) would be provided as a result of PCRM's lawsuit would be in conflict with the federal policy under the PPIA promoting the safe cooking of chicken and favoring consumer confidence in the wholesomeness of properly cooked chicken.

## ANALYSIS

We review de novo the court's grant of summary judgment on the purely legal issue of preemption. (*Washington Mutual Bank v. Superior Court* (2002) 95 Cal.App.4th 606, 612 [115 Cal.Rptr.2d 765] [preemption]; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493] [summary judgment].) As the party bringing the motion for summary judgment, the Restaurants bear the burden of persuasion that there are no triable issues of fact, and that they are entitled to judgment as a matter of law. (*Aguilar*, at p. 850; *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1331 [96 Cal.Rptr.3d 813] [cross-complainant filing for summary judgment bears the burden to "produc[e] evidence that demonstrates . . . that there is a complete defense" to the cause of action].)

"In reassessing the merits of the [summary judgment] motion, we 'consider only the facts properly before the trial court at the time it ruled on the motion.' " (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 631 [17 Cal.Rptr.3d 336].) " 'The pleadings define the issues to be considered on a motion for summary judgment' " (*Sturgeon v. Bratton* (2009) 174 Cal.App.4th 1407, 1417–1418 [95 Cal.Rptr.3d 718]), and the issues framed by the pleadings are the only issues a motion for summary judgment must address (*Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 364 [17 Cal.Rptr.3d 39]). We also limit our inquiry to issues raised in the briefs on appeal. (*Naranjo v. Spectrum Security Services, Inc.* (2009) 172 Cal.App.4th 654, 660 [91 Cal.Rptr.3d 393].)

I. *The Safe Harbor Warning Is Not Preempted*

  A. *The Safe Harbor Warning Does Not Create a Conflict Between*
     *Proposition 65 and the PPIA*

█ Even accepting all the Restaurants' arguments about the PPIA—that federal policies (as shown by federal regulations and as described in the USDA letter) encourage the thorough cooking of chicken; that the statute's misbranding provision applies to grilled chicken sold in the Restaurants; and that the Proposition 65 warnings constitute "labeling under the federal statute"—we do not agree that the language of the Safe Harbor Warning creates any conflict between federal policy under the PPIA and Proposition 65. *The Safe Harbor Warning does not even mention chicken.* The Safe Harbor Warning therefore does not communicate any message about chicken of any description, whether well cooked, thoroughly cooked, or grilled. This court finds that the PPIA does not preempt the Safe Harbor Warning, because there is no conflict between the warning and any federal policy concerning chicken. There can be no conflict preemption where there is no conflict. █ "[C]ourts won't 'seek[] out conflicts between state and federal regulation where none clearly exists.' " (*National Meat Assn. v. Brown, supra,* 599 F.3d at p. 1099.)

The Restaurants assert that the conflict stems from the *context* in which the Safe Harbor Warning would be viewed, if (following a future determination that PhIP levels in grilled chicken required warnings) PCRM were to obtain a declaratory judgment that PhIP levels required a Proposition 65 warning, and if the Restaurants not already providing the Safe Harbor Warning were required to provide it. We agree with the trial court that to the extent that the warnings are already displayed in the Restaurants, the context of a court ruling is irrelevant to a preemption analysis. Already existing Safe Harbor Warnings do not come into conflict with federal law regarding poultry simply because grilled chicken may be one of multiple item categories in the Restaurants that contain a "chemical known to the State of California to cause cancer" at a level requiring Proposition 65 warnings.

Further, if some of the Restaurants do not currently provide the Safe Harbor Warning, a requirement that they do so on the basis of the PhIP levels in grilled chicken also does not create a conflict justifying preemption. Once again, the language of the warning makes no specific reference to chicken; thus, the Safe Harbor Warning does not implicate any federal policies regarding the cooking of chicken.

█ At oral argument in this matter, the Restaurants appeared to argue that if a court were to find that their grilled chicken products required the Safe

Harbor Warning, the Safe Harbor Warning would be tainted by association, because PCRM could trumpet the dangers of grilled chicken by publicizing the ruling. In response to the publicity, consumers would conclude that well-cooked chicken was not wholesome, would avoid buying well-cooked chicken, and would avoid cooking chicken well at home, in conflict with USDA policy. That scenario is not, however, a conflict between a Proposition 65 Safe Harbor Warning and the PPIA. Undesirable publicity by a nonprofit organization does not create a conflict between state and federal law or policy. It is a far reach beyond traditional preemption analysis to hold that a warning otherwise not in conflict with federal law is preempted because of the possibility of accompanying publicity. Further, nothing prevents PCRM from publicizing the results of its testing of grilled chicken for PhIP at any time. To the extent that "all we're fighting about here is a press release"—the trial court's words—there is no meaningful conflict between the Safe Harbor Warning and the PPIA. To invoke conflict preemption, the conflict must be " 'of substance and not merely trivial or insubstantial.' " (*Peatros v. Bank of America, supra*, 22 Cal.4th at p. 158.)

### B. *The Safe Harbor Warning Language Is Presumptively Clear and Reasonable*

PCRM argues that the trial court erred in holding, in its first summary judgment ruling, that the Safe Harbor Warning was "clear and reasonable," because there was no evidence regarding "where, how or when the Safe Harbor Warning 'might' be posted" in the Restaurants. At the time of the first summary judgment order, however, PCRM had not proposed the Safe Harbor Warning as a warning it sought in the lawsuit. The trial court's initial order therefore did not address whether PCRM could obtain relief requiring any Restaurant to provide the Safe Harbor Warning. Instead, the court held that to the extent the Safe Harbor Warning language was already posted in the Restaurants, the Safe Harbor Warning was clear and reasonable, barring PCRM from obtaining relief requiring any other warning in the Restaurants posting the warning. The trial court incorporated its first summary judgment order in full into its second summary judgment order. We agree that the language of the Safe Harbor Warning, as already provided in the restaurants, is presumptively clear and reasonable.

The effect of Proposition 65's safe harbor provisions is "[i]f a warning message in the words specified in the regulation is given in one of the methods specified by the regulation, the warning 'shall be deemed to be clear and reasonable.' " (*Environmental Law Foundation v. Wykle Research, Inc.* (2005) 134 Cal.App.4th 60, 66 [35 Cal.Rptr.3d 788]; see Cal. Code Regs., tit. 27, § 25603, subd. (a).) The regulation specifies, for "food . . . intended for immediate consumption," the wording used by the trial court and posted

in at least some of the Restaurants: " 'WARNING: Chemicals known to the State of California to cause cancer, or birth defects or other reproductive harm may be present in foods or beverages sold or served here.' " (Cal. Code Regs., tit. 27, § 25603.3, subd. (a).) The wording of the warning is presumptively clear and reasonable under the statute and the implementing regulations.

Many of the Restaurants' arguments are focused on the warnings provided by PCRM, which specifically mention chicken with one of these adjectives: "well cooked," "thoroughly cooked," or "grilled." As the language of the Safe Harbor Warning is presumptively clear and reasonable, the Restaurants already providing the Safe Harbor Warning would not be required to provide the warnings with the more targeted language that PCRM suggests. The " 'safe harbor' " warning specified in the regulations is "so called because [its] use constitutes compliance with [Proposition 65] without the necessity of a case-by-case factual determination." (*Ingredient Communication Council, Inc. v. Lungren* (1992) 2 Cal.App.4th 1480, 1485 [4 Cal.Rptr.2d 216].)

PCRM argues that there was no evidence in the record regarding the method used by the Restaurants providing the Safe Harbor Warning. The method used by the Restaurants already providing the Safe Harbor Warning was not before the trial court on the first summary judgment motion; only the wording of the warning was in issue. We note that "[t]he warning may be provided 'by using one or more' of the methods specified." (*Environmental Law Foundation v. Wykle Research, Inc., supra*, 134 Cal.App.4th at p. 66; see Cal. Code Regs., tit. 27, § 25603.1.) The regulation states that the warning may appear on a label or, at a retail outlet, "in a manner which provides a warning" through "shelf labeling, signs, menus, or a combination thereof." (Cal. Code Regs., tit. 27, § 25603.1, subd. (b).) "If a party subject to the requirements of Proposition 65 provides a warning in one of the specified safe harbor methods, it need not determine the efficacy of the chosen method or whether some other method would be more effective." (*Wykle Research*, at p. 66.) Whether the Restaurants utilize a method specified in the regulation is not before us on this appeal.

As the clear and reasonable language of the Safe Harbor Warning does not create any conflict with any federal policy regarding the thorough cooking of chicken, the trial court erred in finding that the Safe Harbor Warning was preempted.

## C. The Proposed Warnings Regarding "well cooked" or "thoroughly cooked" Chicken, on Their Face, Are Not Clear and Reasonable

We need not address the language of other possible warnings, since we conclude that the Safe Harbor Warning language, which is clear and reasonable, is not preempted. Nevertheless, we note that the language of the warnings proposed by PCRM cannot be considered clear or reasonable. There is no allegation in the record that all cooked chicken contains PhIP; the only allegation is that *grilled* chicken contains some level of the chemical. The warnings that "well cooked chicken" or "thoroughly cooked chicken" contain PhIP are, on the record before the trial court on summary judgment and before us on appeal, simply without foundation. The warning that "certain chicken products" contain PhIP is also not supported by the record. That warning is not clear—"certain chicken products" is vague and potentially misleading and inaccurate—and thus, it is not reasonable. The warning makes no reference to whether or how chicken is cooked. The vague language is deceptive, and would cause a customer to doubt the safety of all the chicken products sold at the Restaurants, whatever the cooking method.

## D. The Proposed Warning Mentioning "grilled chicken" Does Not Conflict with Federal Policy

Finally, the warning regarding "grilled chicken," while specifically identifying the cooking process that allegedly results in PhIP, even if deemed clear and reasonable, would not create a conflict with the PPIA or run afoul of the purported USDA policy to cook chicken well and thoroughly. Grilling is only one of a variety of ways to cook chicken thoroughly enough to avoid microbiological contamination. Federal policies favoring "well cooked" or "thoroughly cooked" chicken are not frustrated by a warning regarding the effects of only one of various cooking methods available to eliminate microbiological contamination. The Restaurants do not identify any policy under the PPIA favoring the *grilling* of chicken as opposed to other methods of cooking thoroughly. In addition, we by no means imply that a warning under Proposition 65 could not be structured to specifically mention grilled chicken and, at the same time, advise the public of the importance of cooking chicken thoroughly. That question is not before us.

## II. There Is No Evidence That Warnings Are Required

Critically, we note that there was no showing in the trial court that Proposition 65 warnings are required. First, there was no evidence that PhIP levels are high enough to justify Proposition 65 warnings. Second, the regulations implementing Proposition 65 contain a provision, not cited by the parties on appeal, which allows higher levels of carcinogens such as PhIP when cooking is necessary to eliminate microbiological contamination.

■ After briefing by the parties was complete, we received an amicus curiae brief from the California Attorney General in support of PCRM's appeal of the preemption ruling. The Attorney General contends "the trial court's erroneous finding of conflict preemption appears to have arisen because *neither plaintiff nor defendants effectively directed the [trial] court's attention to the Proposition 65 regulatory provision that harmonizes state and federal law.*" (Italics added.) The provision to which the Attorney General refers is the "Cooking Provision," California Code of Regulations, title 27, section 25703, subdivision (b)(1), which allows a higher risk level of additional cancers from exposure to a chemical than the "no significant risk" level (more than one case of cancer per 100,000 people, assuming lifetime exposure), if "sound considerations of public health support an alternative level, as, for example: [¶] . . . *where chemicals in food are produced by cooking necessary . . . to avoid microbiological contamination . . . .*" (Italics added.) The Attorney General argues that the Cooking Provision prevents any facial conflict between Proposition 65 and any federal policy under the PPIA promoting the thorough cooking of chicken, making it unnecessary to find that the PPIA preempted the Proposition 65 warnings PCRM claimed were required.[11]

On summary judgment, the parties did not address the Cooking Provision or present the trial court with scientific evidence whether the PhIP level in grilled chicken required a warning under the "no significant risk" level.[12] The trial court thus apparently granted summary judgment on the ground that the PPIA preempted Proposition 65 warnings without considering the Cooking Provision or any evidence that actual PhIP levels would trigger the statute's warning requirement.

---

[11] The Attorney General also explains that after it received a copy of the Proposition 65 60-day notice, as required under the statute (§ 25249.7, subd. (d)), it conducted a scientific review which concluded that the level of PhIP in grilled chicken fell below the level requiring a Proposition 65 warning, even *without* taking into account the higher level allowed by the Cooking Provision. In November 2008, the Attorney General filed objections to PCRM's settlement with Burger King, pointing out that the Cooking Provision "specifically provide[s] that a less stringent 'alternative risk' standard should be applied where a chemical that causes cancer is created by cooking food in a manner necessary to avoid microbiological contamination. In December of 2006, the Attorney General advised the parties that a review of the evidence showed not only that the level of PhIP present in chicken does not pose a significant risk of cancer, but that PhIP in chicken is created by cooking that reduces the risk of microbiological contamination by an amount greater than any risk created by PhIP itself. While the parties are not bound by that determination, they have provided little substantive response to the issue, and no evidence to the Court addressing it."

[12] The exemption for carcinogen exposure that poses "no significant risk" requires that the person responsible for the exposure (here, the Restaurants) show that the exposure is below that level. (§ 25249.10.)

We conclude that the preemption issue is properly before us, even given the presence of the Cooking Provision in the regulations implementing Proposition 65. While the Cooking Provision does acknowledge the health benefits of thoroughly cooking chicken, it does not eliminate the possibility that the levels of PhIP in grilled chicken will prove to be high enough to require a Safe Harbor Warning, even under the "alternative level" provided for by the regulation. The factual and statistical record regarding the actual level of PhIP in the Restaurants' grilled chicken is undeveloped. Therefore, the Cooking Provision does not eliminate the possibility that a warning would be required. The effect of the Cooking Provision and the actual levels of PhIP in grilled chicken are matters to be developed in the trial court in any future proceedings.

We reverse the trial court's orders granting summary judgment.

## DISPOSITION

The judgment is reversed. Costs are awarded to appellant.

Rothschild, Acting P. J., and Chaney, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 27, 2010, S186566. Corrigan, J., did not participate therein.