Filed 2/27/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> APPLEBEE'S INTERNATIONAL, INC., et al., <br><br>     Defendants and Respondents. | B243908 <br><br> (Los Angeles County <br> Super. Ct. Nos. BC383722, BC457193) |

_____

APPEAL from judgments of the Superior Court of Los Angeles County, Jane L. Johnson, Judge.  Affirmed.

Richards, Watson & Gershon, T. Peter Pierce and Norman A. Dupont for Plaintiff and Appellant.

Arnold & Porter, Trenton H. Norris, Maria Chedid and Sarah Esmaili for Defendants and Respondents Applebee's International, Inc., McDonald's Corporation, OSI Restaurant Partners, Inc., and Chick-fil-A, Inc.

Morrison & Foerster, Michele B. Corash and Robin Stafford for Defendants and Respondents KFC Corporation and Yum! Brands, Inc.

_____

Following our decision reversing summary judgment for defendants in *Physicians Committee for Responsible Medicine v. McDonald's Corporation* (2010) 187 Cal.App.4th 554 (*PCRM I*), the trial court sustained demurrers without leave to amend and dismissed second amended complaints alleging that various chain restaurants serving grilled chicken were in violation of Proposition 65. We affirm.

## BACKGROUND

### 1.     The McDonald's complaint

As we described in *PCRM I*, in January 2008 appellant Physicians Committee for Responsible Medicine (PCRM), self-described as a nonprofit organization "'committed to promoting a safe and healthful diet and to protecting consumers from food and drink that are dangerous or unhealthful,'" filed a complaint in Los Angeles Superior Court, seeking injunctive and declaratory relief and civil penalties against seven chain restaurant corporations (the McDonald's complaint), including respondents Applebee's International, Inc. (Applebee's), McDonald's Corporation (McDonald's), OSI Restaurant Partners, Inc. (the owner of Outback Steakhouse) (OSI), and Chick-fil-A, Inc. (Chick-fil-A) (collectively, the McDonald's defendants). (*PCRM I*, *supra*, 187 Cal.App.4th at pp. 559–560.)

PCRM alleged that the restaurants sold grilled chicken products to consumers in California and that the grilling process created a chemical called PhIP,[1] which appeared on California's list of carcinogenic chemicals and required the restaurants to give a "'clear and reasonable warning'" to individuals under the California Safe Drinking Water and Toxic Enforcement Act of 1986, Health and Safety Code[2] section 25249 et seq. (Proposition 65). (*PCRM I*, *supra*, 187 Cal.App.4th at p. 560.) The complaint alleged: "None of the locations where Defendants grilled chicken products were purchased for purposes of testing had posted clear and reasonable warnings that food sold on the

---

[1] PhIP is shorthand for the chemical 2-AMINO-1-METHYL-6-PHENYLIMIDAZO[4,5-b]PYRIDINE.

[2] All further statutory references are to the Health and Safety Code unless otherwise indicated.

premises contained a chemical known to the State of California to cause cancer." The complaint also stated that in order to comply with Proposition 65, the restaurants "must conspicuously post specific warnings with respect to the carcinogenic dangers of the grilled chicken they offer for sale," and requested a declaratory judgment declaring that any warning not specifically mentioning the carcinogenic effects of grilled chicken is inadequate.

The trial court granted the McDonald's defendants' summary judgment motions, concluding that three specific warnings proposed by PCRM were barred by federal conflict preemption. The trial court also concluded that the Proposition 65 "Safe Harbor" warning was presumptively clear and reasonable, and the restaurants could not be required to provide any different warning in a restaurant already providing the Safe Harbor warning. (*PCRM I*, *supra*, 187 Cal.App.4th at pp. 562–563.) The Safe Harbor Warning states: "WARNING: Chemicals known to the State of California to cause cancer, or birth defects or other reproductive harm may be present in foods or beverages sold or served here." (See Cal. Code Regs., tit. 27, § 25603.3, subd. (a).) Although PCRM also identified the Safe Harbor Warning as a proposed warning, the trial court in *PCRM I* declined to require the posting of the warning in restaurants that did not already post it, noting that although the Safe Harbor Warning did not say anything about grilled chicken, "'the context in which a Safe Harbor Warning, or any other warning, would be posted cannot be ignored.'" Any order that the restaurants post the Safe Harbor warning would therefore constitute a finding that grilled chicken contained carcinogens sufficient to require a Proposition 65 warning, a finding the court concluded would conflict with federal law and policy and was therefore preempted. (*PCRM I*, at pp. 563–564.)

On appeal, we reversed the trial court's summary judgment orders, concluding that the Safe Harbor Warning was presumptively clear and reasonable and was not preempted. (*PCRM I*, *supra*, 187 Cal.App.4th at p. 571.) "As the language of the Safe Harbor Warning is presumptively clear and reasonable, the Restaurants already providing the Safe Harbor Warning would not be required to provide the warnings with the more targeted language that PCRM suggests. The '"safe harbor"' warning specified in the

3

regulations is 'so called because [its] use constitutes compliance with [Proposition 65] without the necessity of a case-by-case factual determination.' [Citation.] [¶] . . . [¶] As the clear and reasonable language of the Safe Harbor Warning does not create any conflict with any federal policy regarding the thorough cooking of chicken, the trial court erred in finding that the Safe Harbor Warning was preempted." (*Ibid.*) We also specifically declined to address the method by which the restaurants posted the Safe Harbor Warning, as the method was not in issue before the trial court. Only the wording of the warning was in issue, and therefore "[w]hether the Restaurants utilize a method specified in the regulation [Cal. Code Regs., tit. 27, § 25603.1] is not before us on this appeal." (*Ibid.*)

**2.    The KFC complaint**

After *PCRM I* was decided in August 2010, PCRM filed a complaint on March 15, 2011 against KFC Corporation and its parent company, Yum! Brands (the KFC complaint), requesting the same injunctive relief, statutory civil penalties, and declaratory relief as in the McDonald's complaint, and alleging that KFC posted the Safe Harbor Warning but failed to warn customers about the PhIP in its grilled chicken, and did not properly post the Safe Harbor Warning: "Although Defendant does post the food and beverage notice set out in the Proposition 65 regulations, this warning does not relate to Defendant's sale of grilled chicken and is not clear and reasonable as required by the statute because a reasonable consumer would not know that Defendant's grilled chicken products contain a known carcinogen. *This warning is also not displayed in a manner calculated to render it as likely to be read and understood by an ordinary individual*." (Italics added.) Like the McDonald's complaint, the KFC complaint also stated that the restaurants "must conspicuously post specific warnings with respect to the carcinogenic dangers of the grilled chicken they offer for sale," and requested a declaratory judgment declaring that any warning not specifically mentioning the carcinogenic effects of grilled chicken is inadequate.

After the McDonald's and KFC cases were ordered related in August 2011, PCRM filed an unopposed motion to formally consolidate the cases, but no formal consolidation order ever issued, although the cases were considered together thereafter.

**3.     The joint challenge to the initial complaints**

In a joint pleading, the McDonald's defendants filed a motion for judgment on the pleadings on the cause of action for a declaratory judgment, on the ground that the McDonald's complaint sought relief inconsistent with *PCRM I*'s conclusion that the Safe Harbor Warning was clear and reasonable as a matter of law, so that PCRM was not entitled to a warning specifically identifying carcinogens in grilled chicken. The KFC defendants filed a demurrer on the same grounds to all three causes of action in the KFC complaint.

At the hearing on the motions on January 17, 2012, the trial court noted that the KFC complaint included an admission that KFC gave Safe Harbor Warnings, and "absent allegations—and then, ultimately, proof—that no warning meeting the requirements of the Safe Harbor provisions have been given, the complaint would fail to state a cause of action." PCRM admitted "we don't have the slightest idea what KFC does with its warnings and how it handles them," and offered to "extend that sentence [stating that KFC restaurants gave the warnings] to say—well, I'll have to ask the people who saw it exactly what they saw; but presumably, what they saw was not the safe harbor warning. They saw this longer—I don't know what they saw. I'll go back, and I'll ask them what they saw—" The court rejoined: "No, no. Listen. You don't get to file a complaint unless you have a reasonable belief that there is a violation . . . . If you don't have any example of a violation, you shouldn't be here." PCRM offered to amend the complaint to state that KFC failed to post any Safe Harbor Warnings without additional language about acrylamide, another chemical found in French fries. The court observed: "I think you [PCRM] have to do a little investigation."

The trial court pointed out that the McDonald's complaint alleged that no warnings at all were given, but the request in PCRM's declaratory relief cause of action (that warnings specifically mention grilled chicken) was not in conformance with the

5

law's requirements. The McDonald's defendants stated that they intended to file for summary judgment "directed quite specifically at the question of whether the signs are posted and the burden of proof for that." The motion would state that interrogatory responses from PCRM indicated that PCRM did not have evidence that the McDonald's defendants did not post the Safe Harbor Warnings, and that the McDonald's defendants did not believe PCRM could show that no clear and reasonable warnings were posted. "[W]e believe that Proposition 65 is quite clear that they need evidence of that before they, honestly, can send a 60-day notice, much less file a complaint, much less move forward in the litigation. [¶] We think that's part of their prima facie case. They must show . . . that we knowingly and intentionally failed to provide a warning." PCRM was now seeking discovery about the posting of the warnings, but at the initiation of the lawsuit PCRM "need[ed] to have those facts before they proceed." PCRM argued that the McDonald's defendants had not responded to its 60-day notice "to say 'No, no. Just go look at our stores. You'll see we're fine," and PCRM was now entitled to discovery. The court responded: "I have to say this again: we're two years into the case, and you tell me you don't have the foggiest idea of what they do." PCRM replied that the issue was what the McDonald's defendants were doing during the one-year period before PCRM filed suit: "[W]hat were they doing in the one-year period from 2007 to 2008?" and up until now in 2012, and that would require extensive discovery. PCRM needed to know what warning signs the McDonald's defendants posted in 2007 and how they were posted, if at all, and intended to file motions to compel. The McDonald's defendants' counsel reiterated that PCRM had to have a sufficient basis for alleging that Safe Harbor or other warnings were not posted in 2008: "We don't believe they had that basis back then, and we certainly don't believe they have the basis now. . . . [W]e don't bear the burden of proof on it. We think the plaintiffs do. We think they had an inadequate investigation from the beginning."

The trial court granted the motions with leave to amend, concluding as to KFC that the Safe Harbor Warning was presumptively "'clear and reasonable' and therefore complies with the law." The KFC complaint conceded that KFC restaurants provided

6

compliant warnings, so that "to amend its complaint in good faith, Plaintiff must possess sufficient facts to support allegations of conduct contrary to these findings." As to the McDonald's defendants, the court concluded that PCRM could not seek to require the posting of specific grilled chicken warnings, as that was not required by Proposition 65 (although additional language could be provided voluntarily or as part of a settlement). The court allowed PCRM to file amended complaints "if it can do so in good faith."

**4.     The first amended complaints and sustained demurrers**

PCRM then filed first amended complaints (FAC) against the McDonald's defendants and KFC in February 2012. The McDonald's FAC omitted any allegation (as had appeared in the original complaint) that the McDonald's defendants did not post any clear and reasonable warnings, instead alleging that Proposition 65 required that in restaurants "clear and reasonable warnings must be placed in conspicuous locations in a manner reasonably calculated to make the warnings likely to be observed by all patrons," and "Defendants have failed to post clear and reasonable warnings in accordance with the statutory requirements of Proposition 65." PCRM alleged that in 2006, when a PCRM employee purchased grilled chicken "from retail establishments owned and operated by all Defendants in the Los Angeles area," the employee "did not see the proposition 65 Safe Harbor Warning posted in the entry, lobby or purchase area" of 18 restaurants. The complaint also alleged that even if "certain" restaurants posted the Safe Harbor Warning, the warning was not "clear and reasonable" because it did not relate to the sale of grilled chicken. PCRM alleged that the McDonald's defendants "have not posted the Safe Harbor Warning in every purchase area, such as the outdoor 'drive-thru' order and pick-up areas or the take-out entrance." In February 2012, PCRM members visited 21 restaurants and their findings "demonstrate that Defendants do not currently post the Safe Harbor Warning in all of the purchase areas of all of their retail establishments," as the PCRM members "did not see the Proposition 65 Safe Harbor Warning posted in at least one purchase area."

The KFC FAC, like the McDonald's FAC, alleged that Proposition 65 required that "clear and reasonable warnings must be placed in conspicuous locations in a manner

7

reasonably calculated to make the warnings likely to be observed by all patrons." PCRM admitted that "certain" KFC restaurants posted the Safe Harbor Warning, but that warning was not clear and reasonable because it did not relate to the sale of grilled chicken. Further, KFC had not posted the warning "in every purchase area, such as its outdoor 'drive-thru' order and pick-up area," of its retail establishments. In February 2012, PCRM members visited 13 KFC restaurants and "did not see the Proposition 65 Safe Harbor Warning posted in at least one purchase area." In contrast to its allegation in the original KFC complaint, PCRM alleged that KFC "failed to post any Proposition 65 warning in one or more of its retail establishments during the period covered by this lawsuit."

The McDonald's defendants and KFC filed demurrers and motions to strike. At the hearing on the demurrers, PCRM raised an issue that did not appear in its KFC FAC, and asserted as to KFC that if the court allowed amendment, it intended to allege that the Safe Harbor Warnings in the restaurants were not in compliance with Proposition 65, because they included language warning about "acrylamide in potatoes" as required by an earlier consent decree. The court pointed out that PCRM still did not allege that any person did an investigation and saw that a KFC restaurant failed to post the Safe Harbor Warning (and PCRM conceded this), only that the warning did not appear in all purchase areas. The court observed: "I don't think you get to drag a defendant into a lawsuit if you haven't even gone into one store where there wasn't a sign posted, and you didn't allege that." The McDonald's defendants pointed out that they "had a dog in the fight," because McDonald's was also subject to a consent decree requiring the same language about acrylamide. The court stated that PCRM had not alleged that supplementing the Safe Harbor Warning rendered it not clear and reasonable, but "that gives you something you can allege, which keeps you from sustained without leave to amend." As to the allegation that KFC did not post warnings in all service areas, "This is not what you reported to the Attorney General. This is a new theory because you were trying to get out from under what . . . I thought [] was the pure plain vanilla safe harbor warning," although the court now understood "all of them reference acrylamide." The court

8

confirmed that PCRM's notice to the Attorney General did not contain an allegation that there were no signs in all service areas. PCRM argued that no such specificity was required. The court stated: "I don't think that 'not in every service area' is an issue here," to which PCRM replied, "All right. We have no problem." Counsel for the McDonald's defendants and counsel for KFC indicated that if amendment was allowed on the supplementation issue, they would argue that the statutory notice was not sufficient to support the complaint. The court reiterated that it would not allow amendment as to posting in every service area "because you didn't give proper notice on that to the Attorney General."

The trial court sustained the demurrers as to McDonald's, Chick-fil-A, and OSI as well as KFC and Yum! Brands, because the Safe Harbor Warning was "'clear and reasonable'" in compliance with Proposition 65, and both FACs "fail[ed] to sufficiently allege based on adequate investigation that Defendants have failed to provide the 'safe harbor' language in at least one location at Defendants' restaurants within the relevant statute of limitations periods; [] Defendants are not required to provide warnings in multiple locations, such as additional warnings in drive-thru, carry-out or other takeaway areas; and [] in light of the years of litigation of these cases, and Plaintiff's changing theories of liability, Plaintiff may amend the [FACs], if it can do so in good faith, to allege that Defendants failed within the statute of limitations period to provide a warning that was 'clear and reasonable' due to the warning sign being supplemented with language specific to acrylamide." The demurrers were sustained regarding PCRM's claim that warnings were required specifically mentioning grilled chicken even where the Safe Harbor Warnings were posted.

Further, the court sustained the McDonald's defendants' demurrer without leave to amend as to Applebee's, because Applebee's was already subject to a consent judgment in an earlier case. (The demurrer was also sustained without leave to amend as to two other restaurant corporations, Brinker International, Inc. and Carlson Restaurants Worldwide, Inc., who are not parties to this appeal.) The remaining defendants were McDonald's, Chick-fil-A, OSI, KFC, and Yum! Brands.

9

**5.      The second amended complaints, sustained demurrers, and dismissals.**

PCRM, undaunted, quickly filed second amended complaints (SAC) against the remaining McDonald's defendants and KFC in June 2012. PCRM alleged in the McDonald's SAC that McDonald's posted an "Acrylamide Potato Warning, and not the Safe Harbor Warning, near the main ordering counter" of nine restaurants, "does not post any Proposition 65 warning" at three restaurants, and did not post a Proposition 65 warning in the drive-thru ordering area of seven others. PCRM also alleged that Chick-fil-A did not post any Proposition 65 warning in four restaurants and in the drive-thru ordering area of one restaurant; and that OSI did not post any warnings at one restaurant and in the take-out order area of another. Further, PCRM alleged that in one Chick-fil-A restaurant, the Safe Harbor Warning posted by the main ordering counter contained an additional sentence referring to a nutritional guide, which contained information regarding acrylamide found in potatoes. PCRM alleged that the Safe Harbor Warning posted by McDonald's was not clear and reasonable under Proposition 65, because it contained "surplus text" related to acrylamide, and the Safe Harbor Warning posted by Chick-fil-A was not clear and reasonable because "it contains an additional sentence that references a separate 'nutritional guide.'" "Due to the surplus text, the [McDonald's warning] is not presumptively clear and reasonable under Proposition 65's regulations," because the warning would lead consumers to believe that acrylamide was the only carcinogen present.

PCRM alleged in the KFC SAC that KFC "posts the Acrylamide Potato Warning, and not the Safe Harbor Warning, via a combination of the sign and brochure near the main ordering counter" of 10 restaurants. Photographs (which PCRM stated were taken in February 2012, showed posters containing the following warning: "WARNING: Chemicals known to the State of California to cause cancer, or birth defects or other reproductive harm may be present in foods or beverages sold or served here. For more specific information, see the nutrition brochure." The KFC SAC also alleged that KFC did not post a Proposition 65 warning in the drive-thru ordering area of 13 restaurants. KFC failed to post "clear and reasonable warnings in the manner and the method

10

prescribed by Proposition 65," and a reasonable consumer would understand the posted warnings to relate solely to acrylamide.

The defendants filed demurrers and motions to strike the SACs, asking the court to deny leave to amend. The court held a hearing on August 15, 2012. The McDonald's defendants argued that PCRM did not have a basis to certify in November 2007 that they had a reasonable and meritorious case as to all the elements of their original action. The court agreed that PCRM's counsel at the previous hearing "said that there hadn't been an investigation with respect to the signage," and although the court had allowed an investigation, "I don't know if that's sufficient." Because "you didn't do any investigation within the statutory period of time with respect to the 60-day notice," the court suggested PCRM would have to file a new lawsuit. "You didn't do the investigation you were supposed to do. I think that would gut . . . the statute completely if someone could just file an action whenever they wanted without going out and taking a look at what the signage was, in at least one outlet, which you didn't do within the statutory period," and here the only investigation was during the course of the lawsuit. The allegation that some restaurants did not post warnings at all went outside the leave to amend. KFC also argued that there was no allegation that there were any KFC locations that did not post a warning.

The trial court sustained the demurrers without leave to amend (and granted the motions to strike without leave to amend, although they were moot). The court took judicial notice of various documents, including consent judgments. As to the McDonald's defendants, the court's written order concluded that PCRM's 60-day notice under Proposition 65, issued November 5, 2007, was invalid because PCRM did not conduct a timely investigation of whether the defendants were providing warnings in their restaurants, and therefore PCRM's certificate of merit was defective at the time that it issued the notice, and at the time it first sued the McDonald's defendants in 2008. This required that the demurrers as to all McDonald's defendants and all causes of action be sustained without leave to amend. The court also held that Chick-fil-A's Safe Harbor Warning containing additional language referring customers to a nutrition brochure was

11

in compliance with Proposition 65. Although the sustaining of the demurrer disposed of the entire SAC, the court struck the allegations regarding take-away and drive-thru areas because the defendants were not required to provide warnings in multiple locations, and struck the allegations regarding restaurants providing no warnings as attempts to add a new theory of liability that was outside the scope of the leave to amend the court had granted when sustaining the demurrer to the FACs.

As to KFC, the trial court's order concluded that the KFC complaints were sham pleadings "clearly inconsistent with each other" in their descriptions of what warnings KFC posted and why they were insufficient, so that KFC's SAC was "a 'sham' Complaint designed to 'breathe life into the complaint' so as to avoid a demurrer and keep the lawsuit alive." PCRM's initial complaint alleged that KFC posted the Safe Harbor Warning; the FAC alleged that only certain restaurants posted the warning; and the SAC alleged that KFC posted an acrylamide potato warning, and not the Safe Harbor Warning. The SAC, therefore, attempted to omit relevant facts that made the previous complaints defective. The court also concluded that KFC's warnings using the Safe Harbor language and "making reference to the nutrition guide for more 'specific information'" were sufficient under Proposition 65. Finally, the certificate of merit PCRM filed in 2009 to accompany its pre-suit notice as required under Proposition 65 was defective and did not demonstrate that the notice was supported by sufficient evidence, as the SAC made clear that PCRM did not visit the KFC restaurants until February 2012, long after filing the initial complaint against KFC in 2011.

PCRM filed a timely notice of appeal from the judgments. We consolidated the two cases on appeal.

## DISCUSSION

We review de novo the sustaining of a demurrer and the grant of a motion for judgment on the pleadings. (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 145–146.) We review for an abuse of discretion a court's denial of leave to amend, as well as a decision to strike a pleading. (*Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1040–1041; *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612.) PCRM

12

has the burden to establish that the trial court abused its discretion in refusing to allow amendment.  (*Blatty v. New York Times Co.*, *supra*, 42 Cal.3d at p. 1041.)  "When [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: . . . if not, there has been no abuse of discretion and we affirm."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## I.    The demurrers to the SAC were properly sustained without leave to amend.

Proposition 65 provides:  "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity *without first giving clear and reasonable warning to such individual*," unless a specified exemption (not in issue here) applies.  (§ 25249.6, italics added.)  A Proposition 65 warning must be displayed "with such conspicuousness . . . as to render it likely to be read and understood by an ordinary individual under customary conditions of purchase or use."  (Cal Code Regs., tit. 27, § 25603.1, subd. (c).)

Before a private enforcer may sue under Proposition 65 alleging failure to warn of exposure to chemicals known to cause cancer, he or she must give notice of an alleged violation more than 60 days before filing, notifying the defendant, the California Attorney General, and other public enforcers, and must include a "certificate of merit" executed by the private enforcer or its attorney.  The certificate of merit must state that the person executing it has consulted with one or more experts "'who ha[ve] reviewed facts, studies, or other data regarding the exposure to the listed chemical [that is the subject of the action,] and that, based on that information, the [person executing the certificate] believes there is a reasonable and meritorious case for the private action.' . . . '[F]actual information sufficient to establish the basis of the certificate of merit' must be included with the certificate served on the Attorney General.  ([§ 25249.7, subd. (d)(1)].)"  (*Center for Self-Improvement & Community Development v. Lennar Corp.* (2009) 173 Cal.App.4th 1543, 1551.)  The required notice "is a mandatory precondition to bringing a citizen enforcement suit," (i*d*. at p. 554) and the accompanying certificate of merit "operates as a brake on improvident citizen enforcement."  (*Id*. at

13

p. 1551.) While Proposition 65 allows for private enforcement, "public suits are preferred," and the certificate of merit requirement is "designed to discourage frivolous suits." (*DiPirro v. American Isuzu Motors Inc.* (2004) 119 Cal.App.4th 966, 974.) "[C]ertificates of merit discourage groundless, bad faith, frivolous suits in two ways. One way is to provide a basis for imposing sanctions pursuant to section 25249.7, subdivision (h)(2), . . . if the trial court deems the action to be frivolous . . . . The second way is to prevent groundless, frivolous lawsuits before they are filed by providing factual data" that allow prosecuting entities to assess whether the claim has merit, and to encourage resolution of the claim with the alleged violator before the filing of a complaint. (*In re Vaccine Cases* (2005) 134 Cal.App.4th 438, 456-457.)

The implementing regulation clarifies that the certificate's statement that there is a "'[r]easonable and meritorious case for the private action' requires not only documentation of exposure to a listed chemical, but a reasonable basis for concluding that the entire action has merit. The certifier must have a basis to conclude that there is merit to each element of the action on which the plaintiff will have the burden of proof." (Cal. Code Regs., tit. 11, § 3101, subd. (a).)

All the complaints stated that PCRM had provided notice and a certificate of merit as required by the statute and regulations.

**A. PCRM's certificate of merit regarding the McDonald's defendants was defective.**

PCRM filed a 60-day notice on November 5, 2007 as to the McDonald's defendants, alleging that they failed to warn consumers of the PhIP in grilled chicken. The notice stated that the McDonald's defendants "have knowingly and intentionally failed to warn consumers that they are being exposed to the chemical compound 'PhIP' . . . through ingestion of grilled chicken consumed from the . . . Defendants' [restaurants,] without . . . giving clear and reasonable warning to consumers of the significant health risk that these consumer[s] face." The notice stated that the McDonald's defendants failed to provide clear and reasonable warnings at all their California locations.

The attached certificate of merit was signed by PCRM's counsel, and stated that counsel had consulted with one or more experts regarding the alleged exposure to PhIP. Based on that information "and all other information in my possession," there was a reasonable and meritorious case for the lawsuit, "mean[ing] that the information provides a credible basis that all elements of the plaintiffs' case can be established and the information did not prove that the alleged violator will be able to establish any of the affirmative defenses set forth in the statute."

The McDonald's defendants contend that when PCRM's counsel admitted during the hearing on the demurrer to the original complaint that PCRM did not have information regarding whether and how the McDonald's defendants posted warnings (and therefore needed discovery regarding what the McDonald's defendants were doing from 2007 to 2008, when PCRM filed its complaint), that was a binding admission that PCRM had not conducted a factual investigation regarding warnings before filing the lawsuit. This demonstrates that at the time counsel signed the certificate of merit, counsel did not have a credible basis for believing that the McDonald's defendants had failed to warn. Under the requirements of the statute and regulations, the 60-day notice requires that a plaintiff have sufficient information *at the time of filing suit* to support a reasonable basis for concluding that there is merit to each element of the action on which the plaintiff will have the burden of proof, which includes whether a defendant posts clear and reasonable warnings. PCRM did not have the required information to support its notice and its filing of the lawsuit, and therefore the trial court properly sustained the demurrer to the McDonald's SAC.

"[A]n oral statement by counsel in the same action is a binding judicial admission if the statement was an unambiguous concession of a matter then at issue and was not made improvidently or unguardedly. [Citations.]" (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 752.) In sustaining a demurrer, the trial court may take into account as admissions against interest statements made in argument, and may rely on concessions made by plaintiff's counsel during oral argument to show there was no basis for a cause of action. (*Brandwein v.*

15

*Butler* (2013) 218 Cal.App.4th 1485, 1515, fn. 19; *DeRose v. Carswell* (1987) 196 Cal.App.3d 1011, 1019, superseded by statute on another ground as stated in *Ramona v. Superior Court* (1997) 57 Cal.App.4th 107, 112, fn. 6.)

PCRM's statements during oral argument, made repeatedly under close questioning by the trial court, were that it needed to conduct discovery in 2012 to determine "what were [the McDonald's defendants] doing in the one-year period from 2007-2008," and PCRM conceded that *when PCRM's counsel executed the certificate of merit before filing suit in 2008*, PCRM did not know what warning signs were posted and how they were posted in 2007. These statements constitute admissions that PCRM did not have information to support the essential element of a Proposition 65 claim that the McDonald's defendants failed to give "clear and reasonable warning" that its customers were being exposed to a carcinogenic chemical. (§ 25249.6.) PCRM cannot cure this defect in its notice and certificate of merit by later conducting discovery into the warnings given before the filing of the lawsuit. (See *DiPirro v. American Isuzu Motors Inc.*, *supra*, 119 Cal.App.4th at pp. 974–975.)

PCRM argues that consideration of the basis of the certificate of merit must be postponed until the end of the lawsuit, because the statute provides that the factual basis for the certificate is not discoverable unless at the conclusion of the lawsuit, the trial court determines that there was no actual or threatened exposure to a listed chemical, at which time the court may "review the basis for the belief of the person executing the certificate of merit . . . that an exposure to a listed chemical had occurred or was threatened," and shall deem the action frivolous if the court finds "no credible factual basis for the certifier's belief . . . ." (§ 25249.7, subds. (h)(1), (h)(2).) In this case, however, the defendants did not seek discovery into the basis for PCRM's factual basis for believing that the McDonald's defendants' customers were exposed to PhIP in grilled chicken, and did not argue that the complaint was frivolous. Instead, PCRM admitted before trial that it did not have a credible factual belief to support its allegation that the McDonald's defendants did not provide clear and reasonable warnings. The trial court was not required to ignore that admission as it determined whether to sustain the demurrers and

16

whether to grant leave to amend the SAC, and we will not ignore it on appeal. (See *Yeroushalmi v. Miramar Sheraton* (2001) 88 Cal.App.4th 738, 740; *In re Vaccine Cases*, *supra*, 134 Cal.App.4th at p. 459 (affirming the sustaining of demurrers without leave to amend on the ground of failure to comply with Proposition 65 notice requirement).)

### B.       PCRM's certificate of merit regarding KFC was also defective.

PCRM filed a 60-day notice on June 2, 2009 as to the KFC defendants, alleging that since April 2009, KFC's California establishments had sold grilled chicken products exposing consumers to PhIP while "knowingly and intentionally failing to provide clear, reasonable and conspicuous warnings" of the health risks.

The attached certificate of merit was signed by PCRM's counsel on June 2, 2009, and stated that counsel had consulted with one or more experts regarding the alleged exposure to PhIP. Based on that information "and all other information in my possession," there was a reasonable and meritorious case for the lawsuit, which "means that the information provides a credible basis that all elements of the plaintiffs' case can be established and the information did not prove that the alleged violator will be able to establish any of the affirmative defenses set forth in the statute."

At the January 17, 2012 hearing on the demurrer to the original KFC complaint filed in March 2011, PCRM's counsel stated that PCRM saw warnings at KFC restaurants but "we did not check that the  methods that were used were compliant," and "we don't have the slightest idea what KFC does with its warnings and how it handles them." Counsel continued that he would have to ask those who saw the warnings what they saw, and although he "presumed" it was not the Safe Harbor warning, "I don't know what they saw." PCRM's counsel "inferred from [KFC's] lack of response [to the 60-day notice] that . . . they were denying that they had any obligation to post the signs," and "they could have sent me some kind of exhaustive factual finding . . . affidavits and depositions and pictures and exemplars. Then I think that might have put the burden on me."

This 2012 statement by PCRM's counsel that in 2011 when it filed its complaint, PCRM did not know what warnings KFC posted and "we did not check" what methods it

17

used in posting them, is an admission that PCRM did not have that information in 2009 when counsel signed the certificate of merit. At the relevant time, PCRM did not have the factual basis to support its notice or the certificate of merit. Although PCRM's initial complaint stated that KFC did post the warnings, the complaint also stated that the warnings were not displayed in a manner calculated to render them likely to be read and understood by an ordinary individual, and the notice stated that KFC failed to provide "clear, reasonable, and *conspicuous* warnings." (Italics added.) If (as counsel admitted) PCRM did not check the methods by which KFC posted its warnings, the statement in the notice that the warnings were not conspicuous also was not supported by the certificate of merit.

PCRM's notice and certificate of merit were not supported by facts sufficient to provide a basis for PCRM to believe that it could support the elements of its Proposition 65 claim. A notice that is unsupported by adequate investigation and information is equivalent to no notice at all, as PCRM could not give the defendants or the Attorney General (just as it later failed to provide the court) any allegation of how KFC violated the Proposition 65 warning requirement. As we stated above, PCRM cannot cure its defective certificate and notice by later conducting discovery to fill in the gaps in what it knew when counsel executed the certificate and filed the notice. (*DiPirro v. American Isuzu Motors Inc.*, *supra*, 119 Cal.App.4th at pp. 974–975.) "'Neither settlement nor an official investigation is likely to result from a pro forma notice that the citizen intends to sue in 60 days for any violation relating to [the identified carcinogen] that discovery might turn up.' [Citation.]" (*Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* (2007) 150 Cal.App.4th 953, 965.)

A Proposition 65 lawsuit filed without adequate investigation into whether and how defendants post clear and reasonable warnings is susceptible to endless mutations and amendments, leaving defendants like those in this case to answer conflicting and contradictory allegations in each successive iteration of the complaint. The statutory requirements of notice and a supporting certificate of merit are intended to prevent such improvident lawsuits. When the trial court learns from the plaintiff that it did not know

18

what warnings were displayed and how, the requirement of notice is not met, and no further amendment to the complaints can cure that defect. The trial court did not abuse its discretion when it sustained the defendants' demurrers without leave to amend. Our decision makes it unnecessary to address the preclusive effect of the consent decrees.

## DISPOSITION

The judgments are affirmed. Costs are awarded to respondents.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.