Filed 11/13/15  In re A.S. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | B260605 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK79976) |
| Plaintiff and Respondent, | |
| v. | |
| W.V., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Marilyn Martinez, Juvenile Court Referee.  Affirmed.

Denise M. Hippach, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jessica Paulson-Duffy, Deputy County Counsel, for Plaintiff and Respondent.

_____

W.V. (father) appeals from the October 22, 2014 order sustaining a Welfare and Institutions Code section 300 petition as to his four-month-old daughter, A.S., and denying father reunification services.[1]  He contends:  (1) insufficient evidence supported the jurisdictional finding based on father's drug use; (2) it was an abuse of discretion to deny father reunification services; and (3) the juvenile court did not comply with the notice provision of the Indian Child Welfare Act (ICWA).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Viewed in accordance with the usual rules of appeal from an order sustaining a section 300 petition (*In re E.B.* (2010) 184 Cal.App.4th 568, 578), the evidence established that father was not married to mother but mother was living with father when she gave birth to A.S. at home, in a bathroom, in June 2014.[2]  Father dropped mother and A.S. off at the hospital, but did not stay with them.  Hospital staff observed mother talking to herself.  Although she refused to be drug-tested, mother admitted often using marijuana, cigarettes, alcohol, and "crystal meth" while pregnant with A.S., using crystal meth a few days before A.S. was born and smoking marijuana during the delivery to ease the pain.  Mother said father uses crystal meth and marijuana.  A few days later, A.S. tested positive for amphetamines, barbiturates and tricylic (an anti-depressant).  A.S. was detained by the Department of Children and Family Services (DCFS).

As eventually sustained, a section 300 petition alleged dependency jurisdiction based on mother's unresolved history of substance abuse and A.S.'s positive toxicology for several substances (paragraph b-1) and that father "has a history of substance abuse and is a current user of methamphetamine and marijuana which renders [him] incapable

---

[1]    All future undesignated statutory references are to the Welfare and Institutions Code.

[2]    Mother told hospital staff and the social worker that she was alone in the bathroom when she delivered A.S. into the toilet, bit off the umbilical cord and flushed the placenta down the toilet.  She asked that A.S. be examined for any possible head injury caused by her head hitting the toilet during delivery.  Mother's parental rights to an older child had previously been terminated.

2

of providing regular care for the child. The father's substance abuse endangers the child's physical health, safety and well being and creates a detrimental home environment for the child, placing the child at risk of physical harm."

At the detention hearing on June 25, mother identified father as A.S.'s biological father. That day, mother signed a Parental Notification of Indian Status form, also known as a "form ICWA-020." On that form, the box indicating mother may have Indian ancestry is checked and there is the following handwritten notation: "Ute Tribe – MGGGGF – from child." Regarding mother's form ICWA-020, mother's appointed counsel and the court engaged in the following colloquy:

> "THE COURT: I have mother's ICWA notification, and she believes that there is some heritage with a UTE, U-T-E, tribe and that is the . . . maternal great-great-great-grandfather.[3]

> "[MOTHER'S COUNSEL:] Your Honor, with respect to the ICWA, I did also speak to the maternal grandmother. She indicates that the baby may be 132nd [sic]. . . . You have to have a closer degree to qualify for membership. It is a federally recognized tribe, but I believe it's at least four greats or three greats removed from the child.

> "THE COURT: And I believe that's at least one too many to be eligible for ICWA. [¶] So are there any objections to finding that the Indian Child Welfare Act does not apply?

> "[MOTHER'S COUNSEL:] No, Your Honor.

> "[A.S.'S COUNSEL:] No, Your Honor.

> "[DCFS:]: No, Your Honor."

The juvenile court concluded it had no "reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the BIA." A.S. was ordered detained and an August 12 jurisdictional hearing was scheduled.

---

**3** "Maternal great-great-great-grandfather" appears to have been generally understood by the court and counsel to be the meaning of the handwritten notation "MGGGGF – from child."

3

According to the Jurisdictional Report for the August 12 hearing, father had not returned the social worker's telephone calls trying to schedule an interview with father. But when father called to check on A.S.'s well-being, he told the social worker he no longer had any relationship with mother; he was not sure whether A.S. was his child; if A.S. was determined to be his child, he would want custody of her. Father appeared at the August 12 hearing, was appointed counsel and his request for a paternity test was granted; the matter was continued to October 22.

Neither mother nor father appeared at the hearing on October 22. The juvenile court found father to be A.S.'s biological father based on the paternity test results. Father's counsel argued the petition's allegations against him should be dismissed because father "is not here today and he is not coming forward requesting custody, so I think the court can dismiss the petition without prejudice. And should [father] come forth requesting some type of rights to the child, then the department can file an appropriate petition." Alternatively, counsel argued there was no substantial evidence to support the substance abuse allegation: "I believe that the only statement with regard to my client being a current user of drugs comes from the mother. She's listed on my witness list. She's not here for me to cross-examine, but I would question the validity of those statements . . . ." The juvenile court found true the allegation basing section 300, subdivision (b) jurisdiction on father's history of substance abuse and current use of methamphetamine and marijuana.

The court explained:

> "And now why am I sustaining this as to the father? First of all, father was ordered back and advised if he did not appear, the court could proceed in his absence and resolve the jurisdiction/disposition issues against him. . . . [¶] Furthermore, we don't have information from him because he has not cooperated with the social worker and made himself available to be interviewed by the social worker. So he cannot profit or benefit from his own acts of refusing to participate or be interviewed. [¶] Furthermore, I find mother a credible reporter, she is the one who has made clear statements that [father] is drug involved, including methamphetamines. . . . [¶] Being a user of methamphetamines, perhaps unlike marijuana, is a prima facie basis that a parent is drug involved to the extent that they are

4

unable to provide care for a child and also that they pose a risk of detriment to this child, and not only prima facie because I've detained the child, but I'm finding by the preponderance of the evidence."

A.S. was placed with DCFS for suitable placement. Father was given monitored visits but denied reunification services. The court explained: "As a biological father, he does not have a right to reunification. However, I will include him on a case plan. Should he ever want to file a section 388 petition, he will know exactly what it is he was ordered to do." The case plan included a drug program and weekly drug tests. Father timely appealed.

## DISCUSSION

### A.     ICWA

Father contends the dispositional order must be conditionally reversed because the juvenile court did not comply with the ICWA notice requirements. He argues those requirements were triggered by mother's assertion of Indian heritage on the form ICWA-020 and only the tribe could decide whether A.S. met the tribe's eligibility requirements. We find no error.

ICWA allows an Indian tribe to intervene in dependency proceedings involving an Indian child, "to 'protect the best interests of Indian children and to promote the stability and security of Indian tribes and families . . . .' [Citation.]" (*In re J.M.* (2012) 206 Cal.App.4th 375, 380.) An Indian child is defined by ICWA as "any unmarried person who is under age 18 and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

The court and county welfare department (in this case DCFS) have an affirmative duty to inquire whether a child who is the subject of a section 300 petition is an Indian child. (§ 224.3, subd. (a); *In re Aaliyah G.* (2003) 109 Cal.App.4th 939, 942; see *In re W.B.* (2012) 55 Cal.4th 30, 53 [§ 224.3 "defines when and how the juvenile court must inquire . . . ."].) California Rules of Court, rule 5.481(2) implements the statutory duty to

5

inquire by requiring the court to order parents, at their first appearance in a dependency case, to complete a "Parental Notification of Indian Status (form ICWA-020)."

If the court or social worker "knows or has reason to know" that the child is an Indian child, the social worker must give notice to the Indian child's tribe of the dependency proceedings and the tribe's right to intervene in those proceedings. (§ 224.3, subd. (d).) The statute identifies three non-inclusive circumstances that provide reason to know the child is an Indian child, one of which is: A person having an interest in the child provides information suggesting the child is eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe. (§ 224.3, subd. (b).) This circumstance can be separated into two different situations: (1) the child's specific familial relationships with tribe members and (2) the more general "information suggesting the child is eligible for membership in a tribe." Under the more general provision, information that eligibility in the tribe at issue may be based on a relationship to a tribe member more distant than the statutorily specified relationships, and that the child has such a relationship, may give the social worker and the court reason to know the child is an Indian child.

But, more than a "bare suggestion" that a child may be an Indian child is needed to trigger the ICWA notice requirement. (*In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1520.) And "if there is insufficient reason to believe a child is an Indian child, notice need not be given. [Citations.]" (*In re Shane G.* (2008) 166 Cal.App.4th 1532, 1538-1539.) In *Shane*, for example, the maternal grandmother's statement that the child's great-great-great-grandmother was a Comanche did not trigger the notice requirement where there was no information that anyone in the family "ever lived on a reservation, attended an Indian school, participated in Indian ceremonies or received services from an Indian health clinic. Most significantly, the evidence before the court showed the Comanche tribe requires a minimum blood quantum for membership that excludes Shane." (*Id.* at p. 1539 [parties stipulated that a Comanche representative would testify any member must be at least one-eighth Comanche]; see *In re Z.N.* (2009)

6

181 Cal.App.4th 282, 298 [information that one great grandmother was Cherokee and another "part Apache" was not enough to trigger ICWA's notice requirements].)

We find no error in the juvenile court's conclusion that it had no reason to know A.S. was an Indian child as defined in ICWA. It is undisputed that the duty to inquire was satisfied by requiring mother to complete the Parental Notification of Indian Status at the detention hearing, which was her first appearance in the proceedings. The information mother supplied on that form – that A.S. may have Indian ancestry in the Ute tribe through A.S.'s maternal great-great-great-grandfather – did not give the court or social worker reason to know A.S. was an Indian child.

First, *great-grandparent* is the furthest relationship circumstance identified in section 224.3, subdivision (b)(1). The relationship mother identifies on the form ICWA-020 – great-great-great-grandfather – is not a "great grandparent." Accordingly, that information did not give the court or social worker reason to know A.S is an Indian child.

Second, under *Shane*, information that A.S.'s maternal great-great-great-grandfather was member of the Ute tribe was not "information suggesting the child is eligible for membership in a tribe." Father argues that there was no evidence of the minimum blood quantum requirement for Ute tribe membership. However, during a discussion of whether ICWA applied, mother's counsel stated: "You have to have a closer degree to qualify for membership. . . ." We conclude this statement was an unambiguous concession that the Ute tribe required a minimum blood quantum for membership that excluded A.S. As such, it constituted a judicial admission. (*Physicians Committee for Responsible Medicine v. KFC Corp.* (2014) 224 Cal.App.4th 166, 180 [" '[A]n oral statement by counsel in the same action is a binding judicial admission if the statement was an unambiguous concession of a matter then at issue and was not made improvidently or unguardedly. [Citations.]' [Citation.]"]) On appeal, father does not dispute the veracity of counsel's statement.

On this record, it was not error for the trial court to find it had no reason to know A.S. may be an Indian child. Thus no ICWA notice was required.

## B.       *Father's Challenge to the Jurisdiction Order is Not Justciable*

As we shall explain, father's challenge to the sufficiency of the evidence to support dependency jurisdiction based on his conduct does not raise a justiciable issue.

The primary concern of dependency law is protection of the children. "The court asserts jurisdiction with respect to a child when one of the statutory prerequisites listed in section 300 has been demonstrated. [Citation.]" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.) "For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] As a result, it is commonly said that a jurisdictional finding involving one parent is ' "good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent." ' [Citation.] For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence. [Citations.]" (*Id.* at pp. 1491-1492.) This is because any decision will not result in reversal of the jurisdictional order. Under such circumstances, the appeal raises " ' "abstract or academic questions of law" ' " since we cannot render any relief that would have a practical, tangible impact on the appellant's position in the dependency proceeding. (*Ibid.*) As such, the appeal is generally not justiciable.

But appellate courts have discretion to "address the merits of the jurisdictional findings against one parent where 'the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction" [citation].' [Citation.]" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 309.)

Here, father seeks review of the evidentiary support for the jurisdictional findings based on his conduct, but not the evidentiary support for the findings based on mother's

8

conduct; mother herself has not appealed. As such, even a decision in father's favor would not result in a reversal of the jurisdictional order. Further, father has not identified any consequences to him beyond jurisdiction which would cause us to exercise our discretion to consider his appeal. He does not seek presumed father status and does not challenge the placement order. Nor has father identified any other prejudicial impact of the finding in the current or future dependency proceedings. For these reasons, father's appeal from the jurisdictional order is not justiciable and we decline to exercise our discretion to consider it.

## C.     Denial of Reunification Services To Father Was Not an Abuse of Discretion.

Father contends it was an abuse of discretion to deny him reunification services on the ground that he was not a presumed father. He argues "there is no evidence in the record the court ever considered whether ordering services would benefit [A.S.]" We disagree.

With exceptions not relevant here, the juvenile court *must* order reunification services for the mother and presumed father. (§ 361.5, subd. (a).) It "*may* order services for the child and the biological father, if the court determines that the services will benefit the child." (*Ibid.*, italics added.) Unlike other statutes which require the court to make a record of the reasons for its exercise of discretion, section 361.5, subdivision (a) does not require the court to state its reasons for refusing reunification services to a biological father. (Cf. § 366.26, subd. (c)(1) [court must state on the record or in writing compelling reasons for applying an exception to preference for adoption].)

The purpose of section 361.5 is to provide services that will facilitate reunification of the family. Thus, "reunification services are not required to be provided to a parent who will not be taking custody of the children." (*Robert L. v. Superior Court* (1996) 45 Cal.App.4th 619, 628; superseded by statute on another ground as stated in *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 56.) In *In re Elijah V.* (2005) 127 Cal.App.4th 576, 628), a biological father who was not seeking custody appealed from the order denying him reunification services. His only argument as to why it was in the child's

9

best interests to order reunification services, was that it would give father an opportunity to build a parent-child relationship with the child. The Court of Appeal affirmed, reasoning that it was not an abuse of discretion to decline services because the biological father was not seeking custody. (*Id.* at p. 589.)

Here, father's counsel expressly stated that father was not seeking custody of A.S. Under *Robert L.* and *Elijah V.*, this was reason enough to deny father reunification services and the court had no duty to explain why it believed reunification services would not benefit A.S. Contrary to father's assertion, the court did not make reunification services conditional on father filing a section 388 petition. The court's reference to a section 388 petition can only reasonably be understood as referring to father's ability to file a section 388 petition seeking presumed father status which, if granted, would likely entitle father to reunification services.

## DISPOSITION

The judgment is affirmed.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

FLIER, J.

10