Filed 11/30/20  In re Isabella F. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re Isabella F., a Person Coming Under the Juvenile Court Law. | D077807 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. SJ11682D) |
| Plaintiff and Respondent, | |
| v. | |
| JESSICA F., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Affirmed.


William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Jessica F. (Mother) claims that insufficient evidence supports the juvenile court's dispositional findings regarding her three-year-old daughter, Isabella F. The court found that placing Isabella with presumed father, Jesus R., would be detrimental to the child under Welfare and Institutions Code section 361.2, subdivision (a),[1] or in the alternative, that Isabella's removal from Jesus was necessary and appropriate under section 361, subdivision (c)(1). We conclude that substantial evidence supports the court's detriment finding and accordingly, affirm the dispositional findings and order.

### FACTUAL AND PROCEDURAL BACKGROUND

Mother has a long history of substance abuse. Her parental rights over three of Isabella's older siblings were terminated. Despite participating in various treatment programs associated with the prior dependency cases, Mother remains addicted to methamphetamine.

In February 2017, Mother gave birth to Isabella. The man who Mother believed was Isabella's biological father (Y.R.) was not present or involved. A few weeks after Isabella's birth, Mother met Jesus and began a relationship with him. In July 2018, Mother gave birth to another child (half sibling), over whom Jesus claimed paternity. The family lived together until about mid-2019. Around that time, Mother was taken into police custody, and her relationship with Jesus ended. Mother went from custody to the FRC drug treatment program and then to the KIVA drug treatment program. The half sibling continuously lived with Jesus. Isabella stayed with Jesus most of the time, but when Mother was able to, she cared for Isabella.

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

2

In early January 2020,[2] Mother left KIVA and thereafter, smoked methamphetamine every other day. Jesus reportedly had no suspicions or concerns that she was using drugs.

In early February, Mother picked up Isabella from Jesus and took her to the Big 7 Motel in Chula Vista where Mother's boyfriend had a room. The next day, officers from the US Marshals Fugitive Task Force located Mother's boyfriend, who was a known fugitive, at the motel. Officers breached the motel room and arrested Mother and her boyfriend, both of whom had felony arrest warrants. Two-year-old Isabella was sitting on the bed. Within the toddler's reach were a large quantity of various illegal drugs and drug paraphernalia. The drugs were intended for sale.

The San Diego County Health and Human Services Agency (Agency) filed a petition on behalf of Isabella, alleging that she was at substantial risk of serious physical harm due to Mother's failure or inability to supervise or protect her. (§ 300, subd. (b).) The petition specifically alleged that Isabella was inadequately supervised during the motel drug incident, Mother has a long history of drug use and was currently using methamphetamine, and her parental rights over three other children had been terminated. The juvenile court detained Isabella at Polinsky Children's Center, and she was later placed in a foster home.

As part of its investigation, the Agency spoke to Y.R., the man who Mother believed was Isabella's father. He denied paternity, said he had previously undergone a paternity test to confirm this, and had no desire to be involved in the case.

---

[2] Subsequent unspecified date references occurred in 2020.

The Agency also interviewed Jesus. He and Mother had no formal custody arrangement over Isabella and her half sibling. Jesus reported that he normally cared for Isabella four times a week and considered her to be his daughter. He sometimes had to leave San Diego County for work, during which time the children "would remain with [Mother] for up to two weeks." Although Jesus was aware of Mother's history of incarceration and her participation in various court-ordered drug treatment programs, he had no worries or concerns about leaving Isabella in Mother's care. When the Agency asked him whether he ever suspected that Mother was using drugs or affiliating with drug users, Jesus stated, "as long as I don't see it I wouldn't ask her." He did not ask because "whenever he would tell [her] something it usually led to an argument." Jesus said he did not know that Mother's boyfriend was involved in drugs and had heard that the boyfriend was "a good person."

In its jurisdiction and disposition report, the Agency noted that Jesus wanted to elevate his paternity status and have Isabella placed with him. However, the Agency had been unable to conduct a home visit and assessment because Jesus had recently moved multiple times. The Agency also expressed concern that at the time Isabella was detained, Jesus was her longtime care provider, and he claimed not to have suspected Mother's substance abuse. The Agency recommended Isabella's continued placement in foster care, where she was doing well.

In a parentage inquiry form, Jesus attested that he held himself out as Isabella's father and that he had supported her financially and emotionally since she was three weeks old.

On the date set for the jurisdiction and disposition hearing in early March, the court granted Jesus's request to be elevated to presumed father

4

status. (Hereinafter, we refer to Jesus as Father.) Mother's counsel requested a continuance so that Father's home could be evaluated and the Agency could develop a case plan for him. The court continued the hearing without objection.

The Agency followed up with Father, who disclosed a past drinking and marijuana problem. He was self-employed as a car painter and struggled with maintaining stable housing. He had gone from living with a roommate, to living in hotels for a year, to his current arrangement of living with roommates. On March 12, the date scheduled for the Agency's home visit, Father notified the social worker—who was at the time standing outside the address that he had given her—that he had moved out the night before and was staying somewhere else for only one night. According to Father, his roommates did not want to go through the Agency's home clearance process.

Father continued his search for housing, and in late March, moved in with a different roommate, Guillermo. Father told the Agency that he would be entering into a lease agreement with Guillermo, who was aware of, and willing to abide by, the Agency's clearance process. However, when the Agency interviewed Guillermo, he was hesitant, stating that he was merely allowing Father to stay with him temporarily, "to get on his feet." A day later, Guillermo refused to proceed with the clearance process and reported that Father was going to be living with him for only one to two months. At that point, Father no longer wished to proceed with an evaluation of Guillermo's home.

Due to the COVID-19 pandemic and related juvenile court closure, the parties stipulated to a continued contested hearing date. The new hearing date was set in June.

In late April, Father notified the Agency that he had moved again, this time to a two-bedroom home without roommates. However, between April and May, Father did not respond to the Agency's attempts to contact him to schedule a home visit. He failed to participate in substance abuse services and failed to respond to two Agency requests for drug tests.

By June, Father was staying at a hotel in Chula Vista. He planned to stay at the hotel on a weekly or monthly basis until he could find an apartment. As of June 10, he had not responded to the Agency's request to schedule a home evaluation.

In mid-June, trial proceeded on the jurisdictional and dispositional issues by way of documents and stipulated testimony. Without objection, the court received in evidence (1) the Agency's reports detailing the foregoing events and (2) testimony regarding Father's current housing situation.

Based on the evidence and arguments of counsel, the court made a true finding on the petition by clear and convincing evidence. Further, the court declined to place Isabella with Father, finding that he was a noncustodial parent and that placement with him would be detrimental to Isabella under section 361.2; the court found, in the alternative, that if Father was a custodial parent, removal from him was necessary and appropriate under section 361, subdivision (c)(1). The court continued Isabella's placement in foster care.

Mother's appeal followed.[3]

---

[3]     Father separately appealed, but his appeal was dismissed after his appellate counsel filed a brief pursuant to *In re Sade C.* (1996) 13 Cal.4th 952, indicating that there were no arguable issues. (*In re I.F.* (Aug. 17, 2020, D077629) [dismissal order].)

6

Mother claims that there is insufficient evidence to support the court's removing Isabella from Father (§ 361, subd. (c)(1)), or alternatively, that insufficient evidence supports the detriment finding for placement purposes (§ 361.2, subd. (a)). The Agency responds that the court found that Father was a noncustodial parent and that substantial evidence supports a finding that placing Isabella with him would be detrimental. Even if Father was a custodial parent, the Agency submits that substantial evidence supports Isabella's removal from him. We agree with the Agency.

Preliminarily, we address the issue of whether Father was a custodial or noncustodial parent. The issue was thoroughly argued at trial, with the court taking a recess at one point to consult relevant legal authorities, and subsequently, allowing additional argument on the issue. Both Mother's and Father's counsel conceded, and repeatedly urged the court to find, that Father was a noncustodial parent with whom placement was appropriate under section 361.2. For example, Father's trial counsel stated, "the evidence before the [c]ourt clearly establishes father as a noncustodial parent. . . ." Mother's trial counsel stated, "[M]other supports father in his request for placement and agrees that he was noncustodial. . . ." However, on appeal, Mother has taken a different position, contending that Isabella lived with Father at the time the protective issues arose, i.e., that he was a custodial parent, and that removal from him was improper.

The statements of counsel for Mother and Father amounted to judicial admissions that Father was a noncustodial parent. (*Physicians Committee for Responsible Medicine v. KFC Corp.* (2014) 224 Cal.App.4th 166, 180 [counsel's oral statement at hearing is a binding judicial admission if the statement was an unambiguous concession of a matter then at issue and was

7

not made improvidently or unguardedly].) A judicial admission "is a conclusive concession of the truth of the matter." (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 187.) Similarly, the doctrine of judicial estoppel precludes a party from taking inconsistent positions in a judicial proceeding. (*Ibid*.) Having taken the position that Father was a noncustodial parent, Mother cannot now posit that he was a custodial parent.[4] (*Id.* at p. 188.)

Consistent with the foregoing doctrines, the juvenile court observed that whatever arrangement the parents had was uncertain and found that "[Father] was a noncustodial parent. Even though he did care for [Isabella] . . . a lot of time, that was very informal, and I think the law requires a little more formality than just: [']Here you take [the child] today because I've got to go out and do something.[']"[5] As noted, the juvenile court made an alternative finding that even if Father was a custodial parent, removal from him would be necessary.

Section 361.2 governs the rights of noncustodial parents. It provides: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the

---

[4] On reply, Mother maintains that Isabella was living solely with Father "at the time that the events or conditions arose that brought the child within the provisions of Section 300." (§ 361.2, subd. (a).) Mother is incorrect. According to both Mother and Father, Isabella did not live with Father all the time, and Mother took the child essentially whenever Mother wanted. There is substantial evidence that Isabella recently lived with Mother at the maternal aunt's house. Of course, Isabella was in her mother's physical care during the motel drug incident, when Mother was taken into custody.

[5] The court's ruling is contained in the hearing transcript. To the extent that there is a discrepancy between the court's oral ruling and minute order, the oral ruling prevails. (E.g, *People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)

8

child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent *unless it finds that placement with that parent would be detrimental* to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a), italics added; *In re Liam L.* (2015) 240 Cal.App.4th 1068, 1081.)

" 'A detriment evaluation requires that the court weigh all relevant factors to determine if the child will suffer net harm.' " (*In re Liam L.*, *supra*, 240 Cal.App.4th at p. 1086.) A finding of detriment is tantamount to a finding that placing the child with the noncustodial parent is not in the child's best interests. (*Ibid.*) "We review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the [child] would suffer such detriment." (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426.)

In this case, substantial evidence supports a finding by clear and convincing evidence that placing Isabella with Father would be detrimental to her "safety, protection, or physical or emotional well-being." (§ 361.2, subd. (a).) The juvenile court was significantly concerned about Father's inadequate parenting skills and/or his conflict-avoiding, nonprotective mentality that led to Isabella's detention. According to Father's own statements, he knew about Mother's drug problem and/or consciously avoided knowing about it, and he nevertheless had no concerns about leaving Isabella in Mother's care. Father said that he did not inquire about Mother's activities or associations in order to avoid arguments with her. His conduct in this regard posed a significant risk to Isabella's safety and well-being.

9

The record contains substantial evidence of other factors that support a finding of detriment, as well. Father became unresponsive as the case progressed, failing to participate in services and in drug testing. This was problematic, in view of his disclosure of past drinking and drug issues. (Cf. *In re E.E.* (2020) 49 Cal.App.5th 195, 217 [father's minimizing mother's drug problem and failing to cooperate with child welfare agency supported removal order].) In addition, Father struggled to secure stable housing, which, combined with all of the other circumstances, was concerning. Between March and June alone, the Agency was aware of Father's having moved four times, and he was planning to move again. He would not allow the Agency to assess any of his homes, and in one instance (with Guillermo), Father mischaracterized the willingness of his roommate to have their home evaluated for placement. By the time of the hearing, the Agency still had not seen where Father proposed to live with Isabella. In totality, the record supports a finding of detriment by clear and convincing evidence.

Mother argues that Father's continuing custody over Isabella's half sibling is an indication that Father would keep Isabella safe. However, as the Agency points out, the record contains little or no information about the half sibling's current safety or whereabouts. Moreover, we do not reweigh evidence on appeal or substitute our judgment for that of the trial court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 319.) The juvenile court was aware that the half sibling was in Father's custody and considered Father's general parenting abilities, but also discussed serious areas of concern that, in the court's judgment, put Isabella at significant risk of harm. Mother has failed to establish reversible error.

Mother also argues that the juvenile court could have placed Isabella with Father and restricted Mother's access to Isabella to keep the child safe.

10

Mother never previously requested or argued that her access to Isabella should be restricted; to the contrary, at trial she sought in-person visitation. Mother's argument is therefore forfeited. (*In re E.A.* (2012) 209 Cal.App.4th 787, 791 [forfeiture of "alleged defect that could have been easily cured, if raised in a timely fashion"].) In any event, Father's allowing contact with Mother was not the only potential detriment to Isabella.

In summary, substantial evidence supports the court's detriment finding and decision not to place Isabella with Father.[6]

---

[6] Given our resolution of this appeal, we have no need to provide a detailed discussion of the court's alternative finding that, assuming Father was a custodial parent, removal from Father was necessary under section 361, subdivision (c)(1). Assuming that Father was a custodial parent, substantial evidence supports Isabella's removal from him for the same reasons that placement with him would be detrimental.

## DISPOSITION

The dispositional findings and order are affirmed.


AARON, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.